OLMSTEAD v. RITTENHOUSE. See Case No. 10,503a.

## Case No. 10,504.

### OLMSTEAD v. The SANDUSKY.

### [8 Betts, D. C. 53.]

District Court, S. D. New York. Oct. 15, 1846.

COLLISION—VESSEL AT ANCHOR WITHOUT LOOK-OUT.

[A schooner lying at anchor in the North river at night, about 100 yards from the dock at Thirteenth street, New York, was injured by the tow of a steamboat which was endeavoring to land one of her tows at the dock. There was no lookout on the schooner, and the man who took the helm on a hail from the steamboat forced the vessels in collision by sheering the schooner in the wrong direction. Held, that the schooner was alone in fault in anchoring in such place without keeping a lookout, but that no costs should be allowed claimants, as the maneuver of the steamboat was slightly hazardous.]

[This was a libel in rem by John B. Olmstead against the steamboat Sandusky for collision.]

BETTS, District Judge. This was a collision in the harbor of New York. The schooner Ann M. had just anchored off Thirteenth street. One of the libellant's witnesses concurs with the statement of the libel that she was one-quarter or one-third across the river from the east shore; but the decided preponderance of testimony is that she lay far within that distance, and she was probably not over 100 yards from the docks. The steamboat Sandusky, with a heavy tow of barges, was endeavoring to make in so as to land one of her barges at Thirteenth street, and, in passing to the east of the schooner, a barge in tow and the schooner came together, inflicting damages to both, but only very trifling to the tow, and between $70 and $80 of injury to the schooner.

To enable the libellant to recover for those damages, it must be clearly established that he was guilty of no fault or neglect on his part conducing to the accident, and that there was negligence on the part of the steamboat. Abb. Shipp. 300, 301. The doctrine has been carried so far as to hold that the libellant must not only clear himself of all neglect, but the burthen is furthermore on him to prove the accident would have equally happened if he had performed his duty. Grattan v. Appleton [Case No. 5,707].

The collision occurred at 8 or 9 o'clock in the evening, in November. The tide was running strong ebb. No person was on the watch on board the schooner until the steamboat was in dangerous proximity to her, nor until she had been hailed from the steamboat to sheer off or to slip her cable. Then two men came on deck from the cabin and cabin gangway. One of them swears that he sheered the schooner all he could, but the other says nothing was done at her helm, for there was no time to do anything before she was struck. The latter witness was probably confused by the incidents and mistaken in what he asserts. The other is more likely to be correct, as he speaks of his own actions. The want of a proper lookout on deck was an inexcusable omission. In anchoring directly in the path of vessels coming down the river and making the different piers in that vicinity, it was a cardinal duty of the schooner to place and keep a competent watch on deck for her own security, as well as to aid in the protection of others. This was no idle service. It is fully proved by both classes of witnesses that the schooner, by aid of the tide under her, could be steered by the strain of her cable so as to veer 20 to 50 feet from her position. She had, half an hour before this collision, avoided one with the sloop Highlander by that maneuver. Owing, doubtless, to alarm and the imminency of the danger, the helm, when taken, was not borne off in the right direction.

The decided weight of evidence is that the schooner was given a rank sheer to the eastward, and that her movement that way caused the collision. A boat secured alongside of the steamer hit her on the starboard bow, and both glanced by. There is the discordance of testimony usual to this class of cases as to almost every feature of the case. The witnesses for the libellant assert that the steamer was steering eastwardly across the bows of the schooner when they struck. Those for the claimant insist the steamer at the time was in a line directly east of the schooner, and straightened her course, heading down the river along the docks. More witnesses on the steamer and the towboats, noticing this fact, testify to it, than are produced to contradict them; and who were placed in equally favorable circumstances to determine the position and bearing of the two vessels. The witnesses on board the schooner insist she was lying fore and aft on the tide at the time; and this is corroborated by others on board the sloops R. Wilkie and Highlander. Those vessels, however, were such distance off and so out of the line of the schooner as that persons on board them could not, in the night, give opinions upon the matter with equal opportunity for accuracy with those placed upon the particular vessels coming in contact. The captain, two pilots of the steamer, and two captains of the boats in tow testify that

the schooner came on them quarterly, sheering rank in eastward, and that the steamer had ample room to pass her safely with the tows, if she had aided by sheering west, or had even kept her position fore and aft on the tide.

On this state of the evidence, it must be pronounced that the libellant has not supported his allegations, and the decree must be for the claimants. But I am not disposed to give them costs. The steamer undertook to make her passage through a place merely sufficient for her to do it if the two vessels she went between had both been conducted with extreme prudence and good judgment. But her close approach in the night, with towboats spreading out wide, was calculated to produce perturbation and confusion with those on board the schooner, and a sudden exertion to get clear of the impending danger might lead them to fall upon the mistake which insured it. Such I have no doubt was the fact here; and, although the circumstances are not so far blamable as to impose on the steamer the consequences of the collision which ensued, I think they should equitably operate to take away her claim to costs. Decree accordingly.